Alice Robie Resnick, J.,
dissenting.
{¶ 43} Semantics aside, appellee, Kimberly McCrone, was injured in the course of her employment for Bank One Corporation, and her injury arose out of that employment. She was injured as a result of a bank robbery that occurred at her place of employment while she was the teller on duty. Her injury is real and disabling, and its existence is supported by competent medical evidence. It is work-related in every sense of the word, it was accidental in character and result, and it has prevented appellee from returning to her former position of employment. It is not compensable under the Workers’ Compensation Act, however, because it is psychological or mental in cause and effect, meaning that it has no “physical component” and was unaccompanied by physical trauma or damage. And yet this same injury — posttraumatic stress disorder — would be fully covered under the statute if only the bank robber had been considerate enough of appellee’s compensation position to have shoved her during the robbery so that she could stub her toe and acquire the physical element that is deemed so essential to her right of recovery.
{¶ 44} Now what kind of rational explanation or legitimate state interest could possibly justify distinguishing the compensability of one posttraumatic stress disorder from another under equivalent life-threatening circumstances based on *283 the fortuity of a stubbed toe? Or consider the situation in which the bank robber fires a gun at the teller but narrowly misses. Can it really be concluded with any measure of rationality that there are reasonable grounds for making compensability of the teller’s posttraumatic stress disorder turn on whether she had the “good fortune” from a coverage standpoint to have twisted her back or sprained a finger upon recoiling at the prospect of being shot to death? Does the injured back or finger under these circumstances, or the stubbed toe in the previous scenario, really provide such independent verification of the posttraumatic stress disorder as to be rationally determinative of its compensability?
{¶ 45} The answers to these questions are as obvious as the physical-injury prerequisite to coverage is absurd. Indeed, it is unsatisfactory, to say the least, that the majority is constrained to fall back on the difficulty-of-proof/conservation-of-resources rationale in order to justify the denial of coverage to an entire class of work-related injuries. Not only are workers’ compensation claims routinely amended to include psychological injuries resulting from previously allowed physical injuries, but the time has long since passed when denying recoveries for “purely psychological” injuries can be excused on grounds of evidentiary difficulties or illusory claims. We are no longer living in the 19th century when it was considered impossible to accurately diagnose psychological injuries.
{¶ 46} As Professor Larson explains:
{¶ 47} “[Tjhere is no really valid distinction between physical and ‘nervous’ injury. Certainly modern medical opinion would support this view, and insist that it is no longer realistic to draw a line between what is ‘nervous’ and what is ‘physical.’ It is an old story, in the history of law, to observe legal theory constantly adapting itself to accommodate new advances and knowledge in medical theory. Perhaps, in earlier years, when much less was known about mental and nervous injuries and their relation to ‘physical’ symptoms and behavior, there was an excuse, on grounds of evidentiary difficulties, for ruling out recoveries based on such injuries, both in tort and in workmen’s compensation. But the excuse no longer exists. And therefore a state which would withhold the benefits of workers’ compensation from a worker who, before an obvious industrial mishap, was a competent, respected iron-worker [or bank teller], and after the mishap was totally incapacitated to do the only job he or she was trained for, would nowadays be doing unjustifiable violence to the intent of the workers’ compensation act, for reasons that are without support in either legal or medical theory.” (Emphasis added.) 3 Larson’s Workers’ Compensation Law (1999) 56-17 to 56-18, Section 56.04[1].
{¶ 48} In Bunger v. Lawson Co. (1998), 82 Ohio St.3d 463, 696 N.E.2d 1029, Justice Lundberg Stratton explained:
*284 {¶ 49} “A psychological injury is as real and may be as devastating as a physical injury. Mental trauma that results from a robbery where one believes that one may be injured or killed can be serious and genuinely debilitating. Yet psychological injuries without accompanying physical injury are specifically excluded from compensable injuries under the workers’ compensation statutes.” Id. at 467, 696 N.E.2d 1029 (Lundberg Stratton, J., concurring).
{¶ 50} But if “[a] psychological injury may exist without a concurrent physical injury,” as Justice Lundberg Stratton suggested in Bunger, id., the majority’s current justification for the exclusion, i.e., that “[i]n mental injury claims, the problem arises of establishing the existence of the injury itself’ (emphasis sic), is implausible. Moreover, the majority’s cost-cutting justification rings hollow. Since when is reducing governmental costs sufficient to nullify the basic protections afforded by the Ohio Constitution? Is there a specific dollar amount of savings that must be realized before ignoring the Equal Protection Clause is justified?
{¶ 51} I dissent.
Pfeifer, J., concurs in the foregoing opinion.